822 So.2d 502 (2002)
Metissia RICKS, Petitioner,
v.
Rene LOYOLA, M.D., Respondent.
No. SC01-793.
Supreme Court of Florida.
June 20, 2002.
Rehearing Denied July 16, 2002.
*503 Mark Vieth of Tilghman & Vieth, P.A., and Lauri Waldman Ross of Lauri Waldman Ross, P.A., Miami, FL, for Petitioner.
William T. Viergever of Sonneborn, Rutter, Cooney & Klingensmith, P.A., West Palm Beach, FL, for Respondent.
PER CURIAM.
We have for review Loyola v. Ricks, 777 So.2d 423 (Fla. 4th DCA 2000), which expressly and directly conflicts with the decision in Ed Ricke & Sons, Inc. v. Green, 468 So.2d 908 (Fla.1985). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set forth herein, we quash the decision of the Fourth District Court of Appeal.

*504 PROCEEDINGS BELOW
Dr. Rene Loyola (Loyola) was one of the defendants named in a medical malpractice suit filed below by plaintiff Metissia Ricks (Ricks). Before trial, Ricks settled her suit with another doctor and the hospital involved in this case. At trial, Loyola's attorney made the following comments to the jury during opening statements:
Now, as Mr. Vieth pointed out, Dr. Loyola is not the only health care provider that you will be hearing about. That is, I gather you've gleaned, from what I've said up to this point, there's going to be testimony that the nurses should have done things differently, that Dr. Wengler should have done things differently, before it ever reached the point of ... of being contracted with permanent nerve damage. It just never should have happened.
It will not be something that you need to consider as to why they aren't in this courtroom, although you might want to ask yourself that question. I assure you, though, that this Miss Ricks and her attorney aren't going to tell you why they aren't here.
Loyola, 777 So.2d at 424 (emphasis in original). Ricks moved for a mistrial based on Loyola's attorney's statement contending that the statement implied that there had been prior settlements with other parties, but Ricks requested that the trial court reserve ruling on the motion. See id. at 424. The trial court agreed to reserve ruling and proceeded with a six-day trial, after which the jury returned a verdict for Loyola. The trial court then granted a new trial based on Ricks' motion for mistrial and objection to Loyola's opening statement. See id. at 425.
The Fourth District Court of Appeal reversed and found that the trial court abused its discretion when it reserved ruling on the motion for mistrial and in granting the motion for a new trial. See id. Regarding the trial court's decision to reserve ruling on the motion for mistrial, the Fourth District stated:
In the present case, the trial was scheduled to take five days. The trial actually took six days, in which approximately fifteen witnesses were presented. The motion for mistrial was made the very first day of trial prior to any witnesses testifying. We conclude that the interests of judicial economy were not served by a reservation of ruling based on these circumstances. As such, we hold the trial court abused its discretion by reserving ruling on the Plaintiffs motion for mistrial and subsequently granting the motion for new trial.
Id. In finding that the trial court abused its discretion by granting a new trial, the Fourth District stated:
Section 768.041(3), Florida Statutes, provides that releases, covenants not to sue, and dismissals of defendants by order of the court "shall not be made known to the jury." § 768.041(3), Fla. Stat. (2000). In the present case, the defense counsel's comment during opening statements did not reference any of the prohibited categories. No reference was made to a prior lawsuit, prior defendants, or a settlement. In addition, the jury was unaware that Dr. Wengler and the hospital were originally in the lawsuit, and therefore, they would not have necessarily thought the comment referenced a settlement. Moreover, even if the comment was error, we would find it to be harmless. The comment was isolated and never mentioned again by the defense.
Id. Ricks now contends that the Fourth District opinion conflicts with our decision in Ed Ricke & Sons, Inc.

*505 TRIAL ERROR
In Ed Ricke & Sons, Inc. we considered an "empty chair" argument made at trial during closing arguments after the trial court had entered an order in limine stating that no party, attorney, or witness was to reveal to the jury that there had been a prior lawsuit or settlement between the plaintiff and another defendant. See 468 So.2d at 909. This Court agreed with the district court's decision that the defendant violated that order in limine in several instances, with the "most flagrant" instance occurring during closing argument when defense counsel stated: "Now, there's going to be some other person responsible. I would like for you to ask them some questions. I would like for you to ask him [w]hy Dade County is not a defendant in this litigation." Id. When this statement was made, the plaintiff made a motion for a mistrial and asked the judge to reserve ruling until after the jury returned a verdict. See id. However, the trial court denied the motion right away, stating that the "empty chair" reference was a proper argument. See id. Thereafter, the jury returned a verdict in favor of the defendant and a judgment was entered on that verdict. See id.
On appeal, the Third District reversed and remanded for a new trial, finding that the closing argument violated the order in limine, and that the plaintiff did not waive the right to a new trial by asking the trial court to reserve ruling on the motion for mistrial until after the jury reached a verdict. See id. Upon review, we approved the Third District's decision and explained:
We now explicitly hold that the trial court has the power to wait until the jury returns its verdict before ruling on a motion for a mistrial. A motion for a mistrial coupled with a request that the court reserve ruling until after the jury deliberates is simply a motion for a mistrial, and, if properly made, deserves full consideration at both the trial court and appellate level.
The trial court judge may, in his or her sound discretion, determine whether to rule on a motion for a mistrial immediately or reserve ruling until after the jury deliberates. However, this discretion must be exercised in accordance with precepts of judicial economy. When, as here, the prejudicial comments occur during closing argument, it is quite reasonable for a trial judge to reserve ruling until after the jury deliberates in the hope that the jurors can rise above the alleged prejudice and cure the error. If the verdict cures the error, the court will save the expenditure of additional time, money and delay associated with a new trial. On the other hand, if the judge, after the verdict, incorrectly grants the motion for mistrial and orders a new trial, that order is reviewable on appeal. The appellate court could then reverse the order granting the new trial and order the trial court to enter a judgment on the jury verdict.
Id. at 910. Hence, in Ed Ricke & Sons, Inc., we approved a procedure similar to that invoked by the trial court here.
Although the Loyola, district court opinion cited Ed Ricke & Sons, Inc., it devoted little discussion to the holding and application of that case to its decision. We find that the Fourth District misapplied Ed Ricke, when it basically interpreted the notion of "judicial economy" as involving only the length of time that the trial court reserved ruling on the motion for mistrial without consideration, for example, of the nature of the offending comment or the fact that a new trial would not have been required had there been a verdict for the plaintiff. In the instant case, the Fourth District reversed the trial court's grant of *506 a new trial solely because the motion was made on the first day of a six-day trial, prior to the presentation of evidence.
In Gutierrez v. L. Plumbing, Inc., 516 So.2d 87 (Fla. 3d DCA 1987), the Third District also commented on a trial court's timing when ruling on motions for directed verdict, demonstrating that resources can be conserved, even after appeal, when trial judges reserve ruling until after the jury renders a verdict:
We have repeatedly instructed that trial judges who are inclined to grant a directed verdict at the conclusion of the case should instead reserve ruling thereon, allow the jury to return a verdict, and thereafter rule on the motion. Had this approved practice been followed in the present case, our reversal of the trial court's ruling would have resulted in a reinstatement of a jury verdict rather than a remand for a costly, time-consuming, and wholly unnecessary new trial.
Id. at 88 n. 2 (citations omitted). As noted in Gutierrez, it often makes more sense for the trial court to wait until the jury renders a verdict, regardless of what stage the trial is in at the time the motion is made, since the jury's action may moot the motion.

TRIAL COURT DISCRETION
We have previously held that trial courts have broad discretion when ruling on motions for new trial and motions for mistrial. In Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999), we stated:
To summarize, this Court has repeatedly held that the trial judge has broad discretion in ruling on a motion for a new trial on the grounds that the verdict is contrary to the manifest weight of the evidence. A trial judge has the responsibility to draw "on his [or her] talents, his [or her] knowledge, and his [or her] experience to keep the search for the truth in a proper channel," and the trial judge should always grant a motion for a new trial when "the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record." Cloud, 110 So.2d at 673. The trial judge's discretion permits the grant of a new trial although it is not "clear, obvious, and indisputable that the jury was wrong." When a trial judge grants the motion for a new trial, he or she must articulate the reasons for the new trial in the order.
When reviewing the order granting a new trial, an appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion. The fact that there may be substantial, competent evidence in the record to support the jury verdict does not necessarily demonstrate that the trial judge abused his or her discretion.
Id. at 497-98. In Ed Ricke & Sons, Inc., we indicated that trial courts possess the same broad discretion in determining whether to reserve ruling on a motion for mistrial. We recognized that a trial court's evaluation of "judicial economy" is an important factor to be considered by the trial court in exercising its broad discretion when ruling on a motion for mistrial. Thus, when a motion for mistrial is made, it is within a trial court's discretion to determine whether it is the best use of judicial resources to let the case go to jury to see if the verdict cures the need for a new trial, or whether it is best to rule on *507 the motion at an earlier stage in the proceedings. But that call remains essentially for the trial court to make from its superior vantage point. See Castlewood Int'l. Corp. v. LaFleur, 322 So.2d 520, 522 (Fla. 1975) ("Mere disagreement from an appellate perspective is insufficient as a matter of law to overturn a trial court on the need for a new trial. The trial judge `was in a much better position than an appellate court to pass on the ultimate correctness of the jury's verdict.'").
Another consideration for trial courts in exercising their broad discretion when reserving ruling on motions for mistrial is that litigants who may be unhappy with the jury that has been selected will not be rewarded when they purposely engage in conduct intended to cause a mistrial. As we explained in Ed Ricke & Sons, Inc.:
The power of a trial court judge to reserve ruling on a motion for a mistrial will not only conserve judicial resources but may also operate to prohibit a wrongdoer from profiting from his intentional misconduct. Unfortunately, it is common practice for some trial attorneys to make prejudicial remarks during closing argument when the posture of his case is doubtful. In these instances, the opposing counsel is forced to make a motion for a mistrial. The trial judge will then order a new trial. Thus, the offending counsel has a second opportunity to try the case and the aggrieved party has little solace but the afforded remedy of beginning all over again. Now that it is clear that a trial judge may wait until after the jury deliberates before ruling on a motion for a mistrial, the incentive to intentionally make prejudicial remarks during closing argument will be minimized.
Id. at 910. Thus, by vesting trial courts with broad discretion to rule on a motion for mistrial after a jury verdict, we maintain a disincentive for parties to engage in improper conduct during the trial.

THIS CASE
The Fourth District's holding in this case represents a departure from an appellate court's duty to apply the reasonableness test when evaluating abuse of discretion. See Allstate Ins. Co. v. Manasse, 707 So.2d 1110, 1111 (Fla.1998). In this case, we find that under our holding in Ed Ricke & Sons, Inc., the trial court was well within its discretion to reserve ruling on the "empty chair" comment until after the jury returned a verdict. Therefore, we disapprove of the Fourth District's rationale that a trial court defies the concept of "judicial economy" merely because it reserves ruling on a motion for mistrial made early on in a trial.
We also disagree with the Fourth District that the objectionable statement was an insufficient basis for the trial court to use in exercising its discretion to grant a new trial. Even though it was Loyola's defense at trial that others were negligent, we find that the objectionable statement could be construed to improperly refer to the underlying reason why those other parties were not involved in the case. Of course, one of the reasons they were not directly involved is because they had settled with the plaintiff. Section 768.041 states in pertinent part:
Release or covenant not to sue.
(1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.
(2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on her or his behalf, has *508 delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
(3) The fact of such a release or covenant not to sue, or that any defendant has been dismissed by order of the court shall not be made known to the jury.
§ 768.041, Fla. Stat. (2000). Here, jurors logically could have interpreted counsel's statement to imply that a settlement had been reached with others involved in the case, despite the fact that counsel did not actually use the word "settlement."
In addition, the statement imposed an improper burden on plaintiffs to explain why the others were not present in the courtroom and parties to the suit. In Ed Ricke & Sons, Inc., we discussed a similar "empty chair" argument, stating:
[D]efense counsel's closing argument was highly prejudicial and improper. The closing argument was not just a traditional empty chair argument. Defense counsel did more than simply argue that Dade County was responsible for the accident. Rather, defense counsel emphasized that there had been a prior suit against that empty chair.
468 So.2d at 909. In the case at bar, Loyola not only emphasized that there was an empty chair by discussing the parties' absence, but insinuated that Ricks was responsible for their absence and was improperly withholding an explanation from the jury. Thus, the Fourth District failed to accord the trial court's ruling the broad discretion it merited and minimized the impact that such an "empty chair" argument may have on a jury by finding that the comment did not reference settlement with other parties, or that if it did, that the error was harmless. See Muhammad v. Toys "R" Us, Inc., 668 So.2d 254, 256 (Fla. 1st DCA 1996) (holding that counsel's improper "empty chair" comments made during voir dire "were patently prejudicial and may have influenced the jury to return a verdict in favor of Toys "R" Us," even though the trial court gave the jury a curative instruction).

CONCLUSION
In conclusion, we disapprove the Fourth District's decision and opinion. Pursuant to our opinion in Ed Ricke & Sons, Inc., the trial court had broad discretion in deciding to reserve ruling on the motion for mistrial, even though the motion was made before any testimony was taken. Further, the trial court acted within its discretion in concluding that Loyola's reference to other parties being absent from the courtroom and that the plaintiff was responsible for explaining why, was a purposeful violation of section 768.014, which could have influenced the jury. Because we find that the trial court did not abuse its discretion by reserving ruling on the motion for mistrial, and subsequently granting a new trial, we quash the Fourth District's decision and remand for further proceedings consistent with this opinion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, LEWIS, and QUINCE, JJ., concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, J., dissenting.
I respectfully dissent and conclude that jurisdiction was not properly granted in this case. The asserted basis for jurisdiction is that the Fourth District misapplied this Court's ruling in Ed Ricke & Sons, Inc. v. Green, 468 So.2d 908 (Fla.1985), *509 concerning the authority of a trial court to reserve ruling on a motion for mistrial based upon counsel's improper closing argument. However, upon review of the two cases, it is apparent that they are factually distinguishable, and that conflict jurisdiction cannot be granted on a "misapplication" theory because the cases involve significantly different controlling facts. See Mancini v. State, 312 So.2d 732, 733 (Fla. 1975).
In Ed Ricke & Sons, Inc., we held:
In summary, we conclude that a motion for a mistrial coupled with a request that the court reserve ruling until the jury completes their deliberations is merely a motion for a mistrial. Any ruling on such a motion is preserved for appellate review. The judge may, at his discretion, order a new trial immediately following the motion for a mistrial or reserve ruling on the motion until after the jury deliberates. However, such a power is limited and must be based upon notions of judicial economy.

468 So.2d at 911 (emphasis supplied). The majority has ignored our holding that the authority to reserve ruling on a motion for mistrial "is limited and must be based upon notions of judicial economy." Id. On the other hand, the Fourth District in Loyola specifically distinguished our holding in Ed Ricke & Sons, Inc., concerning the "judicial economy" standard for reserving on a motion for mistrial:
A trial court has discretion to reserve ruling on motions for a mistrial. See Ed Ricke & Sons, Inc. v. Green, 468 So.2d 908, 910 (Fla.1985). "However, this discretion must be exercised in accordance with precepts of judicial economy.... The power of a trial court judge to reserve ruling on a motion for a mistrial will not only conserve judicial resources but may also operate to prohibit a wrongdoer from profiting from his intentional misconduct." Id.

In the present case, the trial was scheduled to take five days. The trial actually took six days, in which approximately fifteen witnesses were presented. The motion for mistrial was made the very first day of trial prior to any witnesses testifying. We conclude that the interests of judicial economy were not served by a reservation of ruling based on these circumstances. As such, we hold the trial court abused its discretion by reserving ruling on the Plaintiff's motion for mistrial and subsequently granting the motion for new trial.
Loyola, 777 So.2d at 425. It is apparent that the Fourth District came to a different conclusion than this Court did in Ed Ricke & Sons, Inc., because the motion for mistrial in Loyola came at the very beginning of trial rather than at the end.
In Ed Ricke & Sons, Inc., it made abundant sense for the trial court to reserve ruling to see if the jury would cure the error with its verdict. To grant the mistrial would have foreclosed that opportunity and wasted all the time spent in trial. However, in Loyola, counsel's comment was made during opening statements, and the trial court reserved ruling while the trial proceeded thereafter for some six days. Hence, the two cases present diametrically opposed circumstances concerning judicial economy, one mandating delayed consideration, the other immediate relief, if concerns of judicial economy are to prevail.
Indeed, in Loyola, the trial court was urged by counsel to act at once if it should conclude that the opening statement was prejudicial enough to warrant a mistrial, since a new trial could immediately be started with little waste of resources. Surely, waiting for an entire six-day trial to rule that a patently prejudicial opening *510 statement requires a new trial does not comport with the notion of judicial economy. If the ruling on counsel's statement had been rendered shortly after the motion for mistrial was made, the time and expense of the six-day trial would have been saved. This contrasts sharply with the circumstances in Ed Ricke & Sons, Inc., where the entire trial time would have been wasted by an immediate ruling, but possibly saved by reserving ruling. As it stands, an entire six-day trial conducted after the motion for mistrial was made was wasted, and the parties must try this case again.